NATHAN ROBBINS *vs.* METROPOLITAN LIFE INSURANCE
COMPANY.

Worcester. September 23, 1936. — December 28, 1936.

Present: RUGG, C.J., CROSBY, FIELD, DONAHUE, & LUMMUS, JJ.

*Insurance*, Disability.

On conflicting evidence, a finding was warranted that "sleeping sickness" disabling one insured under a policy of disability insurance originated after the issuance of the policy.

CONTRACT. Writ in the Superior Court dated January 16, 1935.

The action was tried before *Baker*, J. There was a verdict for the plaintiff in the sum of $212.50. The defendant alleged exceptions.

The case was submitted on briefs.

*G. R. Stobbs, L. E. Stockwell, & R. M. Stobbs,* for the defendant.

*H. R. Sher,* for the plaintiff.

CROSBY, J. This is an action of contract in which the plaintiff seeks to recover certain disability benefits under a rider attached to a policy of life insurance. The case was submitted to the jury upon a special question which read as follows: "Did the disease from which the plaintiff is disabled occur and originate before the issuance of the policy May 28, 1929." That portion of the contract pertinent to the issues raised by this bill of exceptions is as follows: The defendant "hereby agrees, that upon receipt by the Company at its Home Office in the City of New York of due proof, on forms which will be furnished by the Company, on request, that the insured has, while said policy and this Supplementary Contract are in full force and prior to the anniversary date of said policy nearest to the sixtieth birthday of the insured, become totally and permanently disabled, as the result of bodily injury or disease occurring and originating after the issuance of said Policy, so as to be prevented thereby from engaging in any occupation and performing any work for compensation or profit, and that such disability has already continued uninterruptedly for a period of at least three months, it will, during the continuance of such disability, 1. Waive the payment of each premium falling due under said Policy and this Supplementary Contract, and 2. Pay to the insured, or a person designated by him for the purpose, or if such disability is due to, or is accompanied by, mental incapacity, to the beneficiary of record under said policy, a monthly income of $10 for each $1000 of insurance, or of commuted value of instalments, if any, under said Policy." At the beginning of the trial it was agreed that the plaintiff at the present time is totally and permanently disabled as the result of a disease known as encephalitis lethargica, and the only question for consideration by the jury was whether or not the disease which is disabling the plaintiff at the present time originated or occurred prior to the issuance of the policy on May 28, 1929.

A brother of the plaintiff testified that he was in business with the insured; that during the years 1929 and 1930, with the exception of a cold in February, 1929, for a

couple of days, the plaintiff was perfectly well and healthy; that he attended to his business as a travelling salesman and drove an automobile during all of that period; that the first time the witness noticed anything wrong with the plaintiff was late in 1930, when he complained about his eyes; and that he did not notice the present condition until early in 1931, when he developed a shaking of his hands and body and had a fixed look in his eyes. The plaintiff's wife testified that in 1929 he was confined to his bed, with a cold, and called a physician; that afterwards he was perfectly well; that she did not notice anything wrong with him thereafter until the fall of 1930, when he had trouble with his eyes; and that late in 1930 she was told by his physician, Dr. Taylor, that he had sleeping sickness. Other lay witnesses, including the agent who solicited the plaintiff for insurance, testified that during 1929 and 1930 the plaintiff appeared to them to be "perfectly well, healthy and normal, and attended to his daily duties." The plaintiff testified that he was forty-six years old; that in February, 1929, he was out of work for a couple of days with a cold; that with that exception he felt perfectly well all through 1929, and did his usual work; that he first became ill in the middle of 1930 with his present disease; and that he was first told that he had encephalitis in 1931.

A physician, called by the defendant, testified that he was the family physician of the plaintiff in 1929; that he was called to attend him on February 2, 1929; that he was in bed, and had a temperature, headache, chills and dizziness; that he saw the plaintiff on February 6, and his condition was the same; that he called in Dr. Jordan, a neurologist, on February 11 or 12, because of neurological symptoms of dizziness and blurring of vision; that after Dr. Jordan's examination the witness made another diagnosis, on February 11 or 12, of encephalitis lethargica; that he continued treating the plaintiff on February 18 and 24; that up to March 7 the neurological symptoms of "blurring, tremor of the hands and tremor of the tongue had not diminished"; that the plaintiff was confined to

his house by reason of his illness for thirty-eight days, from February 1 to March 11, 1929; and that he did not treat him again until 1930, when he advised the plaintiff to give up driving a car, and to see a neurologist.*   Dr. Jordan, called by the defendant, testified that he examined the plaintiff in February, 1929, at the request of Dr. Lazarus; that the plaintiff then had double vision, and tremor of the tongue and fingers; and that his diagnosis was encephalitis lethargica.

It could have been found that up to the middle of 1930 the plaintiff was engaged with another person in the wholesale dry goods business, and acted as a travelling salesman; that he performed the duties incidental to his business in a normal manner; that he operated an automobile and attended to other duties relating to the details of the business of the company, until the middle of 1930, and was in every respect in good health.

At the close of the evidence the defendant presented the following requests for rulings: "1. The application filed by the plaintiff to the Continental Casualty Company for sickness benefits is not only evidence that the plaintiff was suffering from the disease of encephalitis lethargica prior to May 28, 1929, but it is also an admission by which the plaintiff is bound.   2. That unless the plaintiff has produced some medical testimony to show the date of the origin of his disease from which he is suffering, he has not sustained the burden of proof."   The judge refused to grant these requests, and the defendant excepted.   It also excepted to the denial of its motion for a directed answer to the special question.   The jury answered the special ques-

---

* This witness testified in cross-examination that after March 7, 1929, so far as he knew, the plaintiff resumed his usual occupation; that he had been at the plaintiff's home after March 7 to treat the plaintiff's children; that he saw the plaintiff up and around; that there was nothing unusual about the plaintiff; that he seemed to be perfectly normal and healthy, moving around actively; "that after March 7, as far as the witness was concerned the plaintiff was perfectly all right; that the witness and the plaintiff live in the same neighborhood; that he saw him various times during 1929; that he seemed perfectly normal; that as far as the witness knows, the plaintiff was normal throughout 1929, and also perfectly well and normal until the latter part of 1930." — REPORTER.

tion in the negative. Thereafter the judge directed the jury to return a verdict for the plaintiff. To this direction the defendant excepted.

The evidence warranted a finding that when the policy was issued by the defendant to the plaintiff on May 28, 1929, the plaintiff was in sound health. The family physician of the plaintiff, who was called by the defendant, so testified. Although there was evidence to the contrary, the answer of the jury shows that it was not credited. There was no evidence which required a finding that the plaintiff was ill before the policy was issued on May 28, 1929, with the exception of a cold in February, 1929, which confined him to his house for a couple of days. There was testimony of lay witnesses tending to show that he was in good health when the policy was issued.

As the defendant's requests for rulings were rightly denied the entry will be

*Exceptions overruled.*